**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

INGENUITY, INC.,

       Plaintiff,

v.
                        Case No:  6:11-cv-93-Orl-28KRS

LINSHELL INNOVATIONS LIMITED and
CONAIR CORPORATION,

       Defendants.

---

## ORDER

This case is before the Court on the Motion for Reconsideration of Conair's Motion for Summary Judgment (Doc. 297) filed by Plaintiff, Ingenuity, Inc. Ingenuity argues that the Court erred in granting summary judgment in favor of Defendant, Conair Corporation, on Ingenuity's tortious interference with contract claim. Because Ingenuity has not met the standard to warrant reconsideration, the motion must be denied.

## I.    Legal Standard

The Federal Rules of Civil Procedure allow reconsideration of orders or judgments in certain circumstances. See Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b). A motion for reconsideration may be granted if there is "newly-discovered evidence or manifest errors of law or fact." Smith v. Ocwen Fin., 488 F. App'x 426, 428 (11th Cir. 2012). Reconsideration may also be granted if there has been an intervening change in the controlling law or to prevent manifest injustice. Raiford v. Nat'l Hills Exch., LLC, No. CV 111-152, 2014 WL 97359, at *1 (S.D. Ga. Jan. 8, 2014). "A motion for reconsideration cannot," however, "be used to relitigate old matters, raise arguments, or present evidence

that could have been raised prior to the entry of judgment." Smith, 488 F. App'x at 428. This standard applies to rulings, such as the one challenged here, that are non-final under Federal Rule of Civil Procedure 54(b).[1] Merrett v. Liberty Mut. Ins. Co., No. 3:10-cv-1195-J-12MCR, 2013 WL 5289095, at *1 (M.D. Fla. Sept. 19, 2013); see also Raiford, 2014 WL 97359, at *1.

## II.    Analysis

Because Ingenuity does not allege newly-discovered evidence or a change in the controlling law, the question is whether the Summary Judgment Order (Doc. 280) contains a manifest error of law or fact or leads to manifest injustice.

### A.    Specific Intent

Ingenuity argues first that "[t]he Court misapplied Florida law regarding tortious interference by requiring direct evidence of Conair's specific intent" to interfere with the contract between Ingenuity and Linshell ("the Distribution Agreement"). (Doc. 297 at 3). Ingenuity argues that specific intent is not required to establish a tortious interference with contract claim in Florida and that to prove intent the plaintiff needs to show that the defendant either desired to interfere or knew that interference was substantially certain to occur. (Id. at 3-8).

This argument, like others raised in this motion, is an attempt to relitigate matters that were or should have been addressed on the motion for summary judgment. Even assuming that Ingenuity were permitted to argue this point on a motion for reconsideration, the argument is not well-taken. Ingenuity correctly states that Florida Standard Jury

---

[1] The time limits stated in Federal Rules of Civil Procedure 59 and 60 do not apply to motions for reconsideration of non-final orders. Merrett, 2013 WL 5289095, at *1. Notably, however, Ingenuity waited forty-four days after the Summary Judgment Order before filing its motion for reconsideration. (See Docs. 280 & 297).

Instructions indicate that intent requires the defendant to have either the desire to interfere or the knowledge that interference is "substantially certain to occur as a result" of the defendant's actions.  Fla. Std. Jury Instr. (Civ.) 408.5.  This statement of law does not conflict with the Court's grant of summary judgment, however, and it does not mean that specific intent is not required in a tortious interference case.  The Eleventh Circuit has recently noted that a tortious interference claim "'requires a plaintiff to prove that the defendant manifested a specific intent to interfere with the business relationship.'"  MKT Reps S.A. DE C.V. v. Standard Chartered Bank Int'l (Americas) Ltd., 520 F. App'x 951, 954 (11th Cir. 2013) (quoting Fiberglass Coatings, Inc. v. Interstate Chem., Inc., 16 So. 3d 836, 838 (Fla. 2d DCA 2009)).  Specific intent is an intent to cause the result.  Id. (quoting Restatement (Second) of Torts § 766 cmt. h and Gossard v. Adia Servs., Inc., 723 So. 2d 182, 185 & n.1 (Fla. 1998)).

Ingenuity has not established how a specific intent standard conflicts with a requirement of proving either desire to interfere or knowledge that interference will occur.  Moreover, the Summary Judgment Order determined that there was no evidence of either a desire or knowledge.  It noted that "[t]hough Conair knew about the contractual relationship between Ingenuity and Linshell . . . , Conair directly asked about Ingenuity and was told by Linshell representatives multiple times that its contract with Ingenuity was at that point non-exclusive and soon to expire." (Doc. 280 at 9).  Ingenuity did not present evidence indicating that Conair knew that its actions would cause interference. (Id. at 9-10).  There was no genuine dispute of material fact as to whether Conair intended to interfere with the Distribution Agreement, either with a desire to interfere or knowledge that

3

interference would result.  At any rate, the Summary Judgment Order does not exhibit manifest error; nor has Ingenuity shown that the Order leads to manifest injustice.

Later in the motion, Ingenuity attempts to put forth a description of evidence it asserts shows Conair's intent or permits the factfinder to make an inference of intent.  (Doc. 297 at 11-17).  This argument was already submitted to and considered by the Court when it ruled on the motion for summary judgment.  Additionally, none of the evidence listed by Ingenuity conflicts with the finding that Conair did not have the intent to interfere with the Distribution Agreement because it was told that the Distribution Agreement was non-exclusive.  Ingenuity then argues for the first time that deliberate ignorance is the equivalent of knowledge and that on this basis Conair should have been liable for tortious interference.  (Doc. 297 at 17).  This argument must be rejected because it was raised for the first time in the motion for reconsideration.  See Smith, 488 F. App'x at 428; Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009).

### B.     Malice

Ingenuity next argues that the "Court also erred in finding that malice is an element of a tortious interference claim under Florida law."  (Doc. 297 at 10).  Some cases do support Ingenuity's argument that malice is not required for tortious interference with a business relationship.  See J.T.A. Factors, Inc. v. Philcon Servs., Inc., 820 So. 2d 367, 370 n.1 (Fla. 3d DCA 2002).  However, summary judgment was granted not because of Ingenuity's failure to show malice but instead because the evidence indicated that Conair was told that the Distribution Agreement was non-exclusive.  (Doc. 280 at 8-9).  In other words, summary judgment was appropriate under Ingenuity's proposed intent standard.  Moreover, some Florida courts require a showing of malice to prove a tortious interference claim.  See, e.g., Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc., 779

4

So. 2d 554, 557 (Fla. 5th DCA 2001).  In its motion for summary judgment, Conair argued that malice was required for a tortious interference claim, but Ingenuity failed to respond to that argument until its motion for reconsideration.  Ingenuity cannot make this argument for the first time in a motion for reconsideration.

### C.   Predisposition

Ingenuity also argues that the alternative basis for granting summary judgment on the tortious interference with a contract claim—Linshell's predisposition to terminate the Distribution Agreement—deserves reconsideration.  (Doc. 297 at 9-10; see also Doc. 280 at 10).  Ingenuity argues that "the facts show Linshell never evinced a 'predisposition' to breach its Contract with Ingenuity, at least not a genuine predisposition.  Rather, Linshell, for purposes of greed, struggled to establish a pretext of a breach on which it sought to justify its wrongful termination of Ingenuity."  (Doc. 297 at 9).  Ingenuity further argues, without citing any authority, that "[i]t is irrelevant, under a for-cause contract, that there is a predisposition to terminate if there is no contract right to do so."  (Id. at 10).

The defense of predisposition to a tortious interference claim is well-established in Florida law.  See, e.g., Mortg. Now, Inc. v. Guaranteed Home Mortg. Co., 545 F. App'x 809, 811 (11th Cir. 2013); Farah v. Canada, 740 So. 2d 560, 561-62 (Fla. 5th DCA 1999). Furthermore, the Court did not address whether any termination by Linshell would have been a justified termination because Conair's motion for summary judgment addressed only the claims against Conair.  See Doc. 280 at 10 ("Regardless of whether Linshell was justified in terminating the contract with Ingenuity, the evidence shows that it was predisposed to do so with or without Conair.").  There is no authority cited by Ingenuity that indicates that a lack of justification for terminating a contract is relevant to the predisposition inquiry.  In fact, Ingenuity's argument that "Linshell, for purposes of greed, struggled to

establish a pretext of a breach on which it sought to justify its wrongful termination of Ingenuity," (Doc. 297 at 9), confirms that Linshell was predisposed to terminate the contract, whether justified or not.  There is no manifest error or injustice in the Court's ruling on this point.

### D.    Contractual Findings

Ingenuity additionally argues that the court erred by finding that Ingenuity failed to perform obligations under the Distribution Agreement and by finding that Linshell did not breach the Distribution Agreement. (Doc. 297 at 4, 18).  According to Ingenuity, this error affected the Court's judgment regarding, among other issues, Conair's intent to interfere. (Id.).  Ingenuity further argues that the Distribution Agreement was modified by course of dealing and that the Summary Judgment Order should be reconsidered because the Court found that the Distribution Agreement was not modified and because the Court did not determine whether the covenants in the Distribution Agreement were dependent or independent. (Id. at 19).

These arguments are not well-taken.  The Court did not rule on issues involving the Distribution Agreement between Ingenuity and Linshell because those issues were not before the Court in the motion for summary judgment filed by Conair.  The Summary Judgment Order stated that "Ingenuity had failed to meet the targets specified in the Distribution Agreement," (Doc. 280 at 4), but it also noted that Ingenuity admitted it did not meet the targets and that the reasons were disputed, (id.).  The Court did not decide whether the Distribution Agreement was breached, or, if so, who breached it. (Id. ("The facts and legal repercussions following Ingenuity's failure to meet the targets . . . are disputed."); id. at 10 (declining to express an opinion on whether Linshell was justified in terminating the Distribution Agreement); see also id. at 12 (same)).  Thus, the Court did

6

not find that either Ingenuity or Linshell breached the Distribution Agreement. The Court's statements relating to the Distribution Agreement did not serve as a basis for any of the Court's legal conclusions. The Court granted summary judgment for several reasons, described above and in its Summary Judgment Order, that had no relation to the validity or terms of the Distribution Agreement.[2]

Finally, Ingenuity argues that the Court made an incorrect conclusion about Ingenuity's right to subdistribute under the Distribution Agreement. (Doc. 297 at 21-23). Again, any factual findings made about the Distribution Agreement did not serve as a basis for the summary judgment granted to Conair. Nonetheless, Ingenuity argues that "[t]he Court did not accept the face value of Mr. Walmsley's deposition testimony on the question of whether Ingenuity, in reality, could select a subdistributor without the consent of Linshell." (Doc. 297 at 21). Ingenuity goes on to quote Mr. Walmsley's deposition, in which Mr. Walmsley denied that the Distribution Agreement contained any language on subdistribution. (Id. at 21-22). Ingenuity cites page 105 of Mr. Walmsley's deposition for this quotation, (id. at 21-22)—the same page that the Court cited in its Summary Judgment Order in concluding that Mr. Walmsley "admitted that Ingenuity could not select a subdistributor under the Distribution Agreement without the consent of Linshell," (Doc. 280 at 3). However, the quotation cited by Ingenuity is actually from two pages earlier in Mr.

---

[2] Ingenuity also seems to argue that the Summary Judgment Order with respect to the claim of tortious interference with business relationships was incorrect for the same reasons. (Doc. 297 at 25). Ingenuity makes no other request for reconsideration with regard to that claim. Thus, the reasons stated in the text regarding tortious interference with a contract also apply to Ingenuity's claim of tortious interference with business relationships.

Furthermore, Ingenuity apparently does not challenge the Court's grant of summary judgment on Ingenuity's breach of contract claim against Conair.

Walmsley's deposition. (Walmsley Dep. I, Doc. 230-4, at 103-04).[3]   Mr. Walmsley then stated, after reading aloud a portion of the Distribution Agreement, "I believe that what it means is we can't assign our rights under this contract to a third party." (Id. at 105). When asked whether it also means that Ingenuity could not "subcontract with a third party absent the written consent of Linshell," Mr. Walmsley responded, "You're right.  Yes.  Correct." (Id.).  Ingenuity's argument that the Court misinterpreted the record is inaccurate, and Ingenuity's description of the evidence to support this argument is incomplete and misleading.

III.    **Conclusion**

Ingenuity has failed to meet the high burden to merit reconsideration. Accordingly, it is **ORDERED AND ADJUDGED** that Ingenuity's Motion for Reconsideration of Conair's Motion for Summary Judgment (Doc. 297) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on August 12, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[3] As in the Summary Judgment Order, the page numbers of depositions refer to the individual pages of the deposition transcript, not the pages of the document on the docket.